IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GEORGE KWAME OFOSUHENE, Petitioner | : : : | CIVIL ACTION NO. 3:CV-05-2166 |
| v. | : : | (Judge Munley)   FILED SCRANTON |
| ALBERTO GONZALES, et al., Respondents | : : : | OCT 3 1 2005 |

PER _____ DEPUTY CLERK

### MEMORANDUM

George Kwame Ofosuhene ("Ofosuhene"), presently a detainee of the Bureau of Immigration and Customs Enforcement (ICE), incarcerated at the York County Prison, York, Pennsylvania, filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. §2241 on October 24, 2005, alleging that his prolonged detention in ICE custody while awaiting deportation violates his constitutional rights. (Doc. 1). He is seeking immediate release. For the reasons set forth below, Ofosuhene's request will be referred to ICE as a request for review under 8 C.F.R. § 241.13.

I. Factual Background.

Petitioner, a native and citizen of Ghana, entered the United States on or about 1992 at New York, New York with fraudulent documents. (Doc. 1-2, p. 2). On December 22, 2003, he was convicted in the United States District Court for the Southern District of New York for conspiracy to file false claims, conspiracy and attempt to transfer and use social security numbers and transfer and use of social security numbers in violation of 18 U.S.C. §§ 286, 1028(f) and (a)(7) and 2, for which the term of imprisonment imposed was thirty months. Id. at p. 3.

On October 21, 2004, he was notified that he was charged with being deportable under section 237(a)(2)(A) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(A)(iii) as amended, because he was convicted of an aggravated felony as defined in section 101(a)(43) of the Act, 8 U.S.C. § 1101(a)(43). Id. On January 20, 2005, he was ordered removed from the United States to Ghana. (Doc.

1-1, p. 1). He did not appeal the decision. Id.

On April 8, 2005, ICE took Ofosuhene into custody. On August 1, 2005, at the conclusion of ninety days, Ofosuhene's custody status was reviewed, which resulted in a decision to continue him in custody. He was also notified that if he was not released or removed from the United States by October 9, 2005, jurisdiction of the custody decision would be transferred to the Headquarters Post Order Detention Unit (HQPDU) and that the HQPDU would make a final determination regarding his custody. (Doc. 1-4, p. 6). He represents that on September 8, 2005, he requested HQPDU to review his custody status. He takes the position that he should not be required to wait for a decision from HQPDU because they are not required to issue a decision within any specific time period. (Doc. 1-1, p. 3).

II. Discussion.

Detention, release, and removal of aliens ordered removed is governed by the provisions of 8 U.S.C. §1231. Under §1231(a), the Attorney General has ninety days to remove an alien from the United States after his order of removal, during which time detention is mandatory. Section 1231(a)(1)(B) provides:

> The removal period begins to run on the latest of then following:
>
> (I) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if the court orders a stay of the removal of the alien, the date of the court's final order.
>
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement. At the conclusion of the 90 day period, the alien may be held in continued detention, or may be released under continued supervision. 8 U.S.C. §§1231(a)(3) & (6).

The issue of whether §1231(a)(6) authorizes the Attorney General to detain a removable alien indefinitely beyond the ninety day removal period or only for a period reasonably necessary to effectuate

the alien's deportation has been resolved by the Supreme Court in Zadvydas v. Davis, 533 U.S. 678 (2001). Reasoning that the indefinite detention of aliens "would raise serious constitutional concerns," the Court concluded that the statute "limits an alien's post-removal-period detention to a period reasonably necessary to bring about the alien's removal from the United States. It does not permit indefinite detention." Id. at 689. The Court asserted that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." Id. at 699. To establish uniformity in the federal courts, the Court recognized six months as a "presumptively reasonable period of detention." Id. at 701. The Court further directed that if the alien provides good reason to believe that there is no significant likelihood of deportation in the reasonably foreseeable future at the conclusion of the six month period, the burden shifts to the government to "respond with evidence sufficient to rebut that showing." Id. The Court stated that not every alien must be released after six months; rather, an alien may still be detained beyond six months "until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Id.

Following the Supreme Court's decision in Zadvydas, regulations have been promulgated to meet the criteria established by the Supreme Court. See 8 C.F.R. § 241.4. Prior to the expiration of the ninety day removal period, the district director shall conduct a custody review for an alien where the alien's removal, while proper, cannot be accomplished during the prescribed period. 8 C.F.R. § 241.4(k)(1)(I).

Ofosuhene received a custody review in August 2005, which resulted in a decision to continue his custody. When release is denied pending the removal, the district director may retain responsibility for custody determinations for up to three months or refer the alien to the HQPDU for further custody review. 8 C.F.R. § 241.4(k)(1)(ii). According to the decision to continue detention, jurisdiction of Ofosuhene's case was transferred to the HQPDU on October 9, 2005. Once jurisdiction is transferred, an eligible alien may submit a written request for release to the HQPDU asserting the basis for the

alien's belief that there is no significant likelihood that the alien will be removed in the reasonably foreseeable future. 8 C.F.R. § 241.13(d)(1). Section 241.13 establishes special review procedures for those aliens who are subject to a final order of removal and are detained under the custody review procedures provided at §241.4 after the expiration of the removal period, where the alien has provided good reason to believe there is no significant likelihood of removal to the country to which he ... was ordered removed ... in the reasonably foreseeable future. 8 C.F.R. § 241.13(a).

While Ofosuhene forwarded a request for release to the HQPDU, he did so prior to the transfer of jurisdiction to the HQPDU. Consequently, respondent will be ordered to treat Ofosuhene's petition as a request for release under 8 C.F.R. §241.13. ICE shall respond to the request within thirty days. Having referred the matter to the government for disposition under existing review procedures, Ofosuhene's petition will be denied.

AND NOW, to wit, this ___ day of October 2005, **IT IS HEREBY ORDERED** that:

1. Petitioner's application to proceed *in forma pauperis* (Doc. 2) is **GRANTED** for the purpose of the filing of the action only.

2. As of the date of this Order, ICE shall treat the instant Petition for Writ of Habeas Corpus as a request for release under 8 C.F.R. §§ 241.4 and 241.13. ICE shall respond to the request within thirty (30) days.

3. The Clerk of Court is directed to serve a copy of the petition and this order on Respondents and the United States Attorney.

4. The Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**.

5. Petitioner's motion to appoint counsel (Doc. 4) is **DENIED** as moot.

BY THE COURT:

JUDGE JAMES M. MUNLEY
United States District Court

4